UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFERY P.,[1]<br><br>　　　　Plaintiff<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]<br><br>　　　　Defendant. | Case No. 2:20-cv-08813-GJS<br><br>**MEMORANDUM, OPINION, AND ORDER** |

## I.　PROCEDURAL HISTORY

Plaintiff Jeffery P. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying his application for

---

[1]　In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

[2]　On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See https://www.ssa.gov/history/commissioners.html*. She is therefore substituted as the defendant in this action.  See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

Disability Insurance Benefits ("DIB").  The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 9 and 10] and briefs addressing disputed issues in the case [Dkt. 14 ("Pltf's. Br."), Dkt. 15 ("Def. Br."), Dkt. 16 ("Reply")].  The matter is now ready for decision.  For the reasons discussed below, the Court finds that this matter should be affirmed.

## II.   ADMINISTRATIVE DECISION UNDER REVIEW

Plaintiff filed an application for DIB alleging disability as of June 7, 2016, primarily due to a stroke and related complications.  [Dkt. 13, Administrative Record ("AR") 213-216, 247.]  Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Diana J. Coburn.  [AR 1-6, 16-26.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled.  *See* 20 C.F.R. §§ 416.920(b)-(g)(1).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  [AR 18.]  At step two, the ALJ found that Plaintiff suffered from hypertension, aortic dissection status post repair, right foot drop, right eye blindness, cerebrovascular accident, stage 3 chronic kidney disease, and obesity.  [AR 18.]  The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  [AR 18.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with specific limitations.  [AR 20.]  Applying this RFC, the ALJ found at step four that Plaintiff was not able to perform his past relevant work.  [AR 23, 38.]  However, at step five, the ALJ found that Plaintiff was capable of performing other work that exists in significant numbers in the economy.  [AR 24.]

Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision.  [AR 1-6.]

This action followed.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

**A.   The ALJ's Credibility Determination is Supported by at Least One Clear and Convincing Reason**

Plaintiff contends that the ALJ failed to provide sufficient reasons for rejecting his testimony regarding his subjective symptoms and functional limitations. [Pltf's. Br. at 3-7.] The Court disagrees.

Because there is no allegation of malingering and the ALJ found that "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms" [AR 21], the ALJ's reasons must be clear and convincing. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted).

Here, the ALJ gave three reasons to reject Plaintiff's credibility: (1) Plaintiff's treatment was routine and conservative; (2) Plaintiff had an unexplained failure to seek treatment; (3) Plaintiff participated in daily activities that were inconsistent with his subjective symptom allegations; and (4) there were inconsistencies between the objective medical evidence and Plaintiff's allegations of disabling limitations.

### 1. Plaintiff's Relevant Testimony

Plaintiff testified that he suffered a stroke in June 2016 which caused a variety of impairments including weakness on his right side, blindness in his right eye, "drop foot," and fatigue. [AR 35, 43.] When asked about the specific impairments that limited his ability to work, Plaintiff testified at length regarding his blindness and resulting eye strain. Plaintiff explained that he is blind in his right eye which causes additional strain in his left eye. [AR 44.] Due to his vision impairment, Plaintiff struggles to read, use the computer or watch television for extended periods of time. [AR 44.] Plaintiff stated further that the he is unable to read regular sized newspaper print and in order to read his mail he takes a picture with his phone so that he can enlarge the font. [AR 44.] The ALJ followed up this testimony by asking Plaintiff the following:

| | | |
|---|---|---|
| Q: | So, what about your day that you described would prevent you from—that you'd be absent four days from work? | |
| A: | Well, I, think the thing that would, would be absent is because most work nowadays is either reading something or getting on a computer or something like that. And then— | |
| Q: | Right. | |
| A: | --just if I did that, it would just, it would just wear me out. | |
| Q: | Okay. | |
| A: | You know, I would be –I wouldn't feel like I can fulfill my job duties because I can't concentrate on reading or, or looking at a computer all the time. | |

…

| | | |
|---|---|---|
| Q: | And correct me if I'm wrong, so, you're saying if you had to do any of the reading type of requirements that it would -- on one day it would knock you out the next day? | |
| A: | Oh, yeah, it, it, would, I mean, it would just— like just trying to read a letter from, you know, a basic letter, you know, it takes so long because I got to, you know, enlarge all the letters to do everything; it just takes a long time to do it. | |

…

| | | |
|---|---|---|
| Q: | Okay. Who do you see for -- you talked about the text and not being able, you know, needing to be large font, and the fatigue, the eye fatigue, and vision fatigue. | |
| A: | Right. | |
| Q: | Who do you see, or what doctors do you talk to about your vision issues? | |
| A: | Well, I, I don't have a vision doctor, I don't have an optometrist or anything like that. So, the only one--- | |
| Q: | You just see your primary care doctor? | |
| A: | Yeah, my primary care, which is Dr. Shu. | |
| Q: | Okay. I just didn't see much in the record with regard to complaints about vision. | |

5

| | | |
|---|---|---|
| A: | Oh. | |
| Q: | Including, you know, needing to enlarge text and – | |
| A: | Right. | |
| Q: | -- what not. | |
| A: | Right.  Well, I think when I, when I go to Dr. Shu's office or Dr. V's office, I think their, their main concern is, you know, from the heart issues.  So, I never even thought to bring the, you know, it's just—I never thought to bring up the eye issues.  Because they know I'm blind in the right eye, so, so I would think—I thought they would take it that I'm using the left eye, that it would, you know? | |

[AR at 52-54.]

The ALJ questioned Plaintiff further about whether, given his vision impairment, he still maintains a driver's license. [AR 55.] Plaintiff explained that although he no longer drives due to his foot drop and his impaired vision, his driver's license is still active, and his physicians have not recommended that his license be revoked, nor that he stop driving. [AR 55.]

### 2. Unexplained Failure to Seek Treatment

In considering Plaintiff's subjective statements about his disabling limitations, the ALJ noted that Plaintiff claimed that "he is unable to read" even a "standard letter." [AR 20.] But in viewing these statements along with Plaintiff's testimony during the hearing, the ALJ found that Plaintiff's subjective complaints were not comparable to the extent of the treatment he sought. Specifically, that "nowhere in the record does the claimant offer a sufficient explanation for not seeking treatment consistent with the degree of subjective complaints." [AR 21.]

It is settled law that an ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" to bear on a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may consider "unexplained failure to seek treatment or to

1  follow a prescribed course of treatment"); *Burch v. Barnhart*, 400 F.3d 676, 681
2  (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his
3  credibility determination."). However, "although a conservative course of treatment
4  can undermine allegations of debilitating pain, such fact is not a proper basis for
5  rejecting the claimant's credibility where the claimant has a good reason for not
6  seeking more aggressive treatment." *Carmickle,* 533 F.3d at 1162.

   Here, the ALJ's reliance on Plaintiff's treatment history was a clear and convincing reason for finding him less than fully credible. The ALJ specifically questioned Plaintiff about his failure to seek treatment, and Plaintiff failed to offer any cogent explanation for that failure—he simply "never thought to bring up the eye issues" to his primary care physician that he admittedly saw "every three to four months." [AR 42-43, 54.] This is significant because, as seen above, when Plaintiff was asked to explain the impairments that would prevent him from working full time, Plaintiff said he is precluded from work because he is unable to look at a computer all the time. [AR 44.] Plaintiff's failure to seek any treatment whatsoever for the primary cause of his work-related disability casts significant doubt on Plaintiff's argument that his claims of disabling conditions are not exaggerated. Thus, the ALJ had good reason to question to limiting effects of Plaintiff's vision impairment and as a result, this was a particularly compelling reason to afford Plaintiff's subjective statements less weight. Because the ALJ provided at least one clear and convincing reason, based on substantial evidence, for discrediting Plaintiff claims of debilitating pain and the severity of his symptoms, the Court's analysis could end here.

**3. Inconsistency with the Objective Medical Evidence**

The ALJ also discounted Plaintiff's statements because the objective medical evidence was inconsistent with Plaintiff's testimony regarding his limitations as follows:

> The claimant alleged right leg weakness. Muscle atrophy is common side effect of prolonged lack of physical activity. However, there is no evidence of atrophy in the claimant's right lower extremity. It can be inferred that, although the claimant experience some degree of difficulties using his right leg, it has not altered his use of those muscles to an extent that has resulted in atrophy. The claimant's subjective complaints and alleged limitations are out of proportion to the objective clinical findings and observed functional restrictions as noted above. There is also no evidence of loss of muscle tone, bulk, mass, or strength that would be compatible with his alleged level of inactivity and inability to function.

[AR 22.] As the Commissioner points out, at least when it is one reason among others, lack of evidence of "disuse [muscle] atrophy" can be a legitimate reason to discount a claimant's allegations of severe pain. (Def's. Br. at 4); *see also Gates v. Colvin*, 621 Fed. Appx. 457 (9th Cir. 2015) (unpublished) (lack of muscle atrophy deemed a sufficient reason for adverse credibility determination); *Stiles v. Astrue*, 256 Fed. App'x 994, 997-98 (9th Cir. 2007) (upholding ALJ's discounting of claimant's credibility based in part on the lack of evidence of "muscle atrophy or wasting"); *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001) (upholding an ALJ's rejection of a claimant's credibility where the ALJ made specific findings including, but not limited to, a lack of atrophy); *Nasir v. Colvin*, No. 5:15-cv-01419-GJS, 2016 U.S. Dist. LEXIS 134955 (C.D. Cal. Sep. 29, 2016) (ALJ could properly determine that lack of "evidence of disuse muscle atrophy" was a legitimate reason to discount a claimant's allegations subjective complaints); *but see Valenzuela v. Astrue*, 247 F. App'x 927, 929 (9th Cir. 2007) (ALJ's adverse credibility determination was not supported by substantial evidence where the record was devoid of any medical testimony to support ALJ's finding that absence of evidence of muscular atrophy indicated claimant's symptoms were not as severe as alleged).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for finding Plaintiff less than fully credible, and therefore declines to remand based on this issue.

**B.    The ALJ's Step Five Finding is Supported by Substantial Evidence**

Plaintiff next argues that ALJ erred in finding that the skills obtained from his past occupation transferred to the alternative occupations suggested by the VE. The ALJ found at step four of the sequential process that Plaintiff is unable to return his past relevant work as a sales representative for Nestle food company. [AR 24.] The VE, however, testified that Plaintiff acquired skills from his sales representative, food products jobs that are transferable to sedentary occupations of order clerk and appointment clerk. [AR 60.] Specifically, the VE indicated that Plaintiff's transferable skills included "using a computer and telephone with the customer. And also setting up appointments or confirming appointments with a customer." [AR 60.]  The VE indicated that Plaintiff could perform alternate jobs in the national economy, including order clerk and appointment clerk, with his acquired skills from his past relevant occupation. [AR 24.]  The ALJ accepted the testimony of the VE and consequently found Plaintiff not disabled at step five of the sequential process. [AR 24-26.]

    **1.    Relevant Federal Law**

Social Security Regulation § 404.1568(d) informs the transferability of skills analysis ("TSA"). Section 1568(d)(1) defines transferable skills that can be used in other jobs "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." Transferability "depends largely on the similarity of occupationally significant work activities among different jobs." *Id.* Section 1568(d)(2) provides that transferability is most probable when:

(i) The same or lesser degree of skill is required;
(ii) The same or similar tools and machines are used; and
(iii) The same or similar raw materials, products, processes or services are involved.

Section 1568(d)(3), however, cautions that complete similarity of these three factors is "not necessary for transferability."  SSR 82-41, 1982 SSR LEXIS 34 (1982 WL 31389) provides further gloss on transferability of skills. SSR 82 41, 1982 SSR LEXIS 34, at *3, [WL] at *5 provides that transferability is most probable and meaningful among the jobs in which the same or lesser degree of skill is required and that, generally, the greater the degree of acquired skills, the less difficulty an individual will experience in transferring skills to other jobs.  SSR 82-41, 1982 SSR LEXIS 34, at *10, [WL] at *5. SSR 82-41, 1982 SSR LEXIS 34, at *10, [WL] at *7, moreover, requires the ALJ to make findings of fact and include them in the written decision.  More specifically, "when a finding is made that a claimant has transferable skills, the acquired skills must be identified and specific occupations to which the acquired work skills are transferable must be cited . . . in the ALJ's decision."  *See also Bray v. Comm'r of Soc. Sec. Adm.*, 554 F.3d 1219, 1223-26 (9th Cir. 2009) (ALJ transferability decision reversed for failing to make the findings required by SSR 82-41, 1982 SSR LEXIS 34); *Renner v. Heckler*, 786 F.2d 1421, 1423 (9th Cir. 1986) (ALJ transferability decision reversed because no finding on amount of vocational adjustment required).

### 2.     Analysis

Based on the VE's testimony, the ALJ found that Plaintiff acquired transferable skills from his past relevant work as a sales representative of food service including: placing orders, using telephones and computers, communicating with customers person-to-person, making appointments, and confirming appointments.  [AR 25, 66.]  Following the administrative hearing, Plaintiff's counsel submitted a post-hearing brief objecting to the VE's testimony.  Plaintiff argued that transferability "must be rejected because [Plaintiff's] past relevant work does not share MPSMS codes, work field codes, GOE codes, or occupation group codes with the alternative jobs identified by the VE.  The ALJ rejected that argument and reiterated that Plaintiff's skills in sales (the past relevant work in this

1    case) and clerical "are highly likely to transfer" to other sedentary or light work."
2    [AR 25.] The ALJ further found that the representative occupations of order clerk
3    and appointment clerk required "lesser skill" than his previous work, and cited the
4    VE's testimony that the skills he acquired were generalized skills, not specific to
5    any one industry. [AR 25, 60, 63.]

6         Plaintiff again repeats his post-hearing argument that the ALJ erred in not
7    using the codes for Work Fields ("WF") and Materials, Products Subject Matter and
8    Services ("MPSMS") from an internal agency Manual Program Operations Manual
9    System ("POMS") DT 25015.017. (Pltf.s' Br. at 11.). However, Plaintiff has failed
10   to demonstrate error in the ALJ's determination. During the hearing, the VE
11   outlined Plaintiff's past work, detailed his transferable skills, and, in responding to
12   questions about a hypothetical person matching Plaintiff's limitations, concluded
13   Plaintiff could perform the order and appointment clerk positions. The VE noted
14   that her testimony was consistent with the DOT and her "expertise." [AR 66.] That
15   testimony is substantial evidence supporting the ALJ's determination and meets the
16   Commissioner's burden. *See, e.g., Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th
17   Cir. 2001); *Migliore v. Colvin*, 2013 U.S. Dist. LEXIS 106808, 2013 WL 3935879,
18   at *2 (C.D. Cal. July 29, 2013) (VE's testimony was substantial evidence supporting
19   Step-Five determination because VE "identif[ied] a specific job or jobs in the
20   national economy having requirements that the claimant's physical and mental
21   abilities and vocational qualifications would satisfy" (quoting *Osenbrock*)).

22        While Plaintiff offers a different analysis under various sources, he has not
23   shown those sources are binding on this Court or the Agency. *See, e.g., Shaibi v.*
24   *Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) ("POMS guidance is not binding
25   either on the ALJ or on a reviewing court."). The law of this Circuit is clear that
26   POMS, as an internal policy guidance manual, does not impose judicially
27   enforceable duties. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072
28   (9th Cir. 2010). Courts in this Circuit, moreover, explicitly have rejected the

argument that transferability of skills requires similarity of work fields ("WF") or Materials, Products, Subject matter and Services ("MPSMS"). *Cordileone v. Saul*, No. CV 18-06388-JEM, 2019 U.S. Dist. LEXIS 194178, 2019 WL 5847832, at *8 (C.D. Cal. Nov. 7, 2019) (collecting cases that rejected the argument that transferability of skills requires similarity of WF or MPSMS codes); *Russell v. Berryhill*, No. 17-CV-00065-SVK, 2017 U.S. Dist. LEXIS 166424, 2017 WL 4472630, at *11 (N.D. Cal. Oct. 6, 2017) (rejecting argument that use of specific vocational preparation, work fields, and "Material, Products, Subject Matter, and Services" codes are "the only acceptable methodology" as unsupported by any legal authority); *Garcia v. Astrue*, 2012 U.S. Dist. LEXIS 132493, 2012 WL 4091847, at *7 (E.D. Cal. Sept. 17, 2012); *Engel v. Colvin*, 2015 U.S. Dist. LEXIS 144467, 2015 WL 6453081, at *5 (C.D. Cal. Oct. 23, 2015).

In sum, the ALJ's reliance on the vocational expert's testimony regarding the transferability of Plaintiff's job skills was supported by substantial evidence and that determination is free of legal error.

### V.   CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

**IT IS SO ORDERED.**

DATED: January 28, 2022

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE